UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JUSTIN W. SKINNER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>　　　　Defendant. | No. ED CV 09-00971-VBK<br><br>MEMORANDUM OPINION<br>AND ORDER<br><br>(Social Security Case) |

　　This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

　　Plaintiff raises the following issues:

　　1.　Whether the Administrative Law Judge ("ALJ") properly

    considered the treating psychiatrist's opinion regarding Plaintiff's mood disorder and GAF score of 45-50;
2.  Whether the ALJ properly considered the treating psychiatrist's opinion;
3.  Whether the ALJ properly considered the State Agency findings;
4.  Whether the ALJ properly considered the treating psychiatrist's opinion regarding Plaintiff's schizoaffective disorder and assessed GAF scores of 25 and 50;
5.  Whether the ALJ properly considered the treating clinician's opinion;
6.  Whether the ALJ properly considered the lay witness statement;
7.  Whether the ALJ posed a complete hypothetical question to the vocational expert; and
8.  Whether the ALJ properly held that Plaintiff can perform the job of fast food worker.

(JS at 2-3.)

  This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

I

**THE ALJ DID NOT ERR IN EVALUATING PLAINTIFF'S MENTAL CONDITION**

  Plaintiff's first five issues dispute the ALJ's evaluation of Plaintiff's mental condition, and thus will be discussed together. Briefly, the issues are summarized as follows:

1: Whether the ALJ erred with regard to a note contained in a psychiatric evaluation by Dr. Diamreyan on December 14, 2005 that Plaintiff has psychotic/mood disorder NOS. (AR 191.)

2: Whether the ALJ properly considered the opinion of treating psychiatrist Dr. Doan on May 8, 2008 as contained in the letter to L. Mejia, Medical EW, that Plaintiff has a long history of mental illness, is diagnosed with schizoaffective disorder, needs long-term treatment because of the chronic nature of the illness, is mature enough to participate willingly and intelligently in the mental health treatment, and is considered to be a danger to himself and others without appropriate mental health treatment and follow up. (AR 512.)

3: Whether the ALJ properly considered the State Agency physician findings of January 18, 2007 of Dr. K. J. Loomis, which assessed that Plaintiff is moderately limited in his ability to understand and remember detailed instructions and carry out detailed instructions. (AR 274.)

4: Whether the ALJ properly evaluated a discharge summary dated December 26, 2007 from Dr. Alvin Mahoney which diagnosed Plaintiff with schizoaffective disorder and bipolar disorder, and also certain Global Assessment of Functioning ("GAF") scores. (AR 402.)

5. Whether the ALJ properly considered a diagnostic form of November 30, 2007 of Dr. Kim, Plaintiff's treating clinician, which diagnosed him with mood disorder with psychotic features and assessed GAF scores. (Plaintiff also references a diagnosis form of an M. F. T. trainee of

December 2, 2005, and an adult psychiatric evaluation of January 21, 2008 which reported that Plaintiff has a severe dysfunction rating, psychotic disorder, and assessed a GAF score.

The ALJ's Decision (AR 58-64) focuses on Plaintiff's mental condition. Indeed, the ALJ assessed that Plaintiff has severe impairments of mixed substance abuse disorder, drug-induced psychosis, borderline intellectual functioning and a personality disorder NOS. (AR 60.) The ALJ found that these impairments, including the substance use disorders, meet §12.02B of the Listings. (20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §416.920(d).) In making this finding, the ALJ adopted the testimony of the medical examiner ("ME"), at the hearing, who found marked difficulties in social functioning and with regard to concentration, persistence or pace. Thus, the ALJ found that Plaintiff met the "paragraph B" criteria of the Listing.

The ALJ also found that if Plaintiff stopped his substance abuse, the remaining limitations would cause more than a minimal impact on his ability to perform basic work activities, and thus, he does have a severe impairment or combination of impairments; however, neither the impairments or combination thereof would meet or medically equal any of the Listings. (AR 62-63.) Moreover, if Plaintiff stopped his substance abuse, he would be able to perform his past relevant work as a fast food worker. (AR 64.) Thus, Plaintiff was found to be not disabled.

With this foundation, the Court will examine the five issues Plaintiff identifies as error in the mental disorder evaluation performed by the ALJ.

4

1    First, as to Dr. Diamreyan, the mere diagnosis or notation of a
2 psychotic mood disorder does not constitute a basis for finding
3 disability. See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).
4    The GAF scale is intended to reflect a person's overall level of
5 functioning at or about the time of the examination, not for a period
6 of at least 12 consecutive months, which is required for a finding of
7 impairment or disability. (See 20 C.F.R. §§416.905, 416.920(c)(2006).)
8    GAF scores are intended to be used for clinical diagnosis and
9 treatment, and do not directly correlate to the severity assessment
10 set forth in Social Security regulations. (See Revised Medical
11 Criteria for Evaluating Mental Disorders and Traumatic Brain Injury,
12 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000), and American Psychiatric
13 Ass'n, Diagnostic and Statistical Manual of Mental Disorders, Text
14 Revision 33 (4th Ed. 2000).
15    With regard to Dr. Doan's statement (Issue No. 2), Plaintiff is
16 factually incorrect in asserting that the ALJ ignored it.  In fact, he
17 commented on it in his decision (AR 61), and it was discussed during
18 Plaintiff's hearing. (AR 15, 35.)  What Plaintiff ignores, however, is
19 that the ALJ did find severe and marked limitations in certain areas
20 of Plaintiff's mental functioning which were due to his substance
21 abuse.  Dr. Doan made his evaluation during one of these periods in
22 which Plaintiff was abusing narcotics heavily, and had to be
23 hospitalized on an emergency basis. (AR 11-14, 62.)  Further, Dr. Doan
24 indicated that Plaintiff should and could participate in mental health
25 treatment. (AR 512.)  Dr. Doan's statement that Plaintiff could be
26 considered a danger to himself and other without appropriate mental
27 health treatment and followup can only be considered in the context of
28 Plaintiff's continuous and self-destructive substance abuse behavior.

1  Concerning the State Agency physician's findings (Issue No. 3),
2 Plaintiff argues that the ALJ failed to consider the assessment of the
3 State Agency physician, but ignores the fact that the ALJ found
4 functional limitations more severe than those found by this doctor.
5 For example, the ALJ found Plaintiff had marked limitations in social
6 functioning and marked difficulties with regard to concentration,
7 persistence or pace, while the State Agency physician found no marked
8 limitations whatsoever. (AR 61, 274-275.)  Further, any functional
9 limitations assessed by the State Agency physician must be considered
10 in context of Plaintiff's substance abuse.

11  Plaintiff's fourth issue asserts that the ALJ erred in ignoring
12 Dr. Mahoney's December 26, 2007 diagnosis of Plaintiff, in which he
13 assessed schizoaffective disorder and bipolar disorder.  Again, as
14 with the first issue, the mere diagnosis of a psychiatric disorder
15 does not substitute for a finding of functional limitations which
16 would establish disability.  And, again, Plaintiff's argument as to
17 the GAF scores has already been addressed by the Court.

18  Finally, Plaintiff's fifth issue challenges the supposed error
19 with regard to a diagnosis of November 30, 2007 by Dr. Kim,
20 Plaintiff's treating physician, who found that Plaintiff has mood
21 disorder with psychotic features and assessed a certain GAF score.
22 The same analysis applies as with the prior issue, that is, that the
23 mere diagnosis of a psychiatric condition does not constitute a
24 finding of disability.  With regard to a "diagnosis" of an M.F.T.
25 trainee, as Plaintiff's counsel knows, such individuals are not
26 considered acceptable medical sources to render diagnostic opinions.
27 And finally, these diagnostic opinions cannot be considered apart from
28 their interconnection with Plaintiff's substance abuse.

**II**

**THE ALJ DID NOT COMMIT REVERSIBLE ERROR BY DISREGARDING**

**THE LAY WITNESS STATEMENT OF PLAINTIFF'S MOTHER**

In Plaintiff's sixth issue, he asserts that reversible error was committed because the ALJ failed to discuss the Function Report - Adult third party of December 26, 2006 of Shellie Skinner, Plaintiff's mother. (JS at 15, et seq., AR 159.) Indeed Plaintiff correctly notes that Ms. Skinner states that he is paranoid and talks to himself, and she opined that his illness affects his ability to concentrate, understand, remember and get along with others. Ms. Skinner reported that there are days when Plaintiff is lucid and some days when he is not, and that it is difficult sometimes to get Plaintiff to take his medication because he accuses Ms. Skinner of trying to poison him. (Id.)

The ALJ's decision indicates that he did accept that Plaintiff suffered from the type of symptomology reported by Ms. Skinner. As set forth in the decision, he found the following:

> "With drug and alcohol abuse, the testimony of the medical expert and the objective medical record clearly supports that [Plaintiff] meets section 12.02B of the listing of impairments. Records supplied by City of Angels Medical Center documented disorganized thought processes, disheveled grooming, dirty clothing, suicidal ideation, delusional statements, paranoid ideation, anxiousness, agitated and confrontational behavior and psychiatric hospitalization discharge summaries documenting positive drug screens for cocaine, methamphetamine and marijuana as well as 5150 hospitalizations for acute psychosis with

7

>     positive drug screens for amphetamines and marijuana. With
>     drug and alcohol abuse, the record further evidences a
>     significant substance induced psychotic disorder as well as
>     borderline functioning averaging in the higher deficient
>     range of verbal IQ against stronger Trails and performance
>     IQ effort. Dr. Malancharuvil, the medical expert, testified
>     that [Plaintiff] met section 12.02B of the listing of
>     impairments with drug and alcohol abuse. His opinion is
>     supported by the evidence in the record."

(AR 62, exhibit citations omitted.)

Thus, nothing that Ms. Skinner reported would have added to or altered the ALJ's opinion. As such, the Court deems that while error, the ALJ's failure to specifically discuss Ms. Skinner's statement was harmless. See Stout v. Commissioner, 454 F.3d 1050, 1054-1057 (9th Cir. 2006). Clearly, the outcome of this matter would not have been affected had the ALJ specifically considered the third party statement.

### III

### THE ALJ DID NOT FAIL TO POSE A COMPLETE HYPOTHETICAL QUESTION TO THE VOCATIONAL EXPERT

Plaintiff's seventh issue involves his contention that the ALJ's hypothetical question posed to the vocational expert ("VE") was incomplete because it failed to set out "Plaintiff's particular limitations and restrictions." (JS at 19.) Plaintiff does not identify in this issue which limitations should have been included in the hypothetical question; however, it may be fairly presumed that the

1 limitations identified by Plaintiff are those he discusses in the
2 remaining issues which he raises in this litigation.
3    It is the ALJ's obligation to include all of the found
4 limitations in a hypothetical question posed to a VE.  See Osenbrock
5 v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2001).  Here, the ALJ
6 formulated a hypothetical question based upon the testimony of the
7 medical expert ("ME") during the hearing. (See AR at 41.)  Any other
8 limitations which might be suggested by Plaintiff based upon the
9 issues he raises in this litigation were not proven to exist, as the
10 Court has extensively discussed.  Consequently, the Court finds no
11 error with regard to the hypothetical question.

**IV**

**THE ALJ PROPERLY HELD PLAINTIFF**

**CAN PERFORM THE JOB OF FAST FOOD WORKER**

16    In Plaintiff's final issue, he asserts that based upon a Mental
17 Residual Functional Capacity Assessment of January 18, 2007 by K. J.
18 Loomis, M.D., which found that Plaintiff is moderately limited in his
19 ability to carry out detailed instructions (AR 274), the ALJ erred in
20 assessing that he could perform his past relevant work as a fast food
21 worker.  Specifically, Plaintiff asserts that under the Dictionary of
22 Occupational Titles ("DOT"), the job of fast food worker has a
23 "reasoning level 2" which requires that Plaintiff have the
24 understanding to carry out detailed but uninvolved written or oral
25 instructions.  Plaintiff concludes that the ALJ deviated from the DOT
26 without explanation, thus mandating remand.
27    Plaintiff's argument fails because it depends on an assessment of
28 his mental impairments which is intricately tied in with his substance

abuse.  Further, the ALJ's RFC assessment did recognize that he had moderate difficulties regarding concentration, persistence or pace. (AR 63.)  The ME at the hearing concluded that Plaintiff is capable of moderately complex tasks with up to four or five step instructions. (AR 41.)  This assessment, which the ALJ adopted, is consistent with the reasoning requirements specified in the DOT for the occupation identified by the ALJ.  As such, the Court finds no error with regard to this issue.

The decision of the ALJ will be affirmed.  The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED**.

DATED: February 8, 2010                    /s/
                                    VICTOR B. KENTON
                                    UNITED STATES MAGISTRATE JUDGE